Georgianna Sharlette, Respondent, *v.* Lake Placid Company, Appellant.

Third Department, January 5, 1921.

Sales — duty of agent of seller to state quality of things to be sold — when such statement constitutes warranty — breach of warranty in sale of pigs in locality where hog cholera was prevalent — statement by agent of seller that pigs were free from cholera.

An agent of the seller owes the duty to his principal truly to state the qualities of the things to be sold and present them in as attractive a way as the circumstances permit. But when he makes an affirmation of fact relating

to them, if the tendency of it is to induce a purchase, the statement is a warranty.

In an action for the breach of a warranty in the sale of pigs in a locality where hog cholera was prevalent to the knowledge of the defendant, a statement by the defendant's superintendent, who had been authorized to sell the pigs, that they were all right and free from hog cholera, must be presumed to have been made with the authority of his principal.

APPEAL by the defendant, Lake Placid Company, from a judgment of the County Court of the county of Essex in favor of the plaintiff, entered in the office of the clerk of said county on the 26th day of November, 1917, upon the verdict of a jury, and also from an order entered in said clerk's office on the 19th day of December, 1917, denying defendant's motion to set aside the verdict and for a new trial made upon the minutes.

*Isham & Isham [Robert F. Isham of counsel], for the appellant.*

*Francis Barry Cantwell, for the respondent.*

JOHN M. KELLOGG, P. J.:

The defendant company carried on extensive farming operations and raised and sold a great many hogs and pigs. In the locality in question there was more or less hog cholera, due probably to the fact that the hogs were fed on garbage. The disease was contagious. Plaintiff was attracted by the defendant's advertisement in the paper that it had pigs for sale at its Highland Farm. At the time she made the purchase many of the defendant's pigs were sick and hog cholera was prevalent in the locality and in defendant's herd, and inoculation was in progress. Walters was the general manager of the defendant's farm affairs, with full power to act. The plaintiff saw the pigs, and Bellmore, the superintendent of the farm, asked four dollars apiece for them. Plaintiff was willing to pay seventy-five dollars for the twenty pigs, if they were all right and free from hog cholera. Bellmore called up Walters on the telephone, and conferred with him about the price. Walters told him to sell the pigs. They were sold upon Bellmore's statement that they were all right and free from hog cholera. He had had charge of the pigs for defendant since their birth. An agent of the seller owes the duty to his principal truly to state the qualities of the things

to be sold and present them in as attractive a way as the circumstances permit. But when he makes an affirmation of fact relating to them, if the tendency of it is to induce a purchase, the statement is a warranty. (Pers. Prop. Law, § 93.) It is not reasonable to say that the agent cannot describe the property to be sold. In that locality, where hog cholera was prevalent to the knowledge of the defendant, the necessity of stating the health and condition of the pigs to a proposed buyer is apparent, and it must be held that the agent had such authority. Walters, who stood in place of the defendant, swore: " Q. That is practically all the instructions he [Bellmore] had; was to sell those pigs for $4 a head; he could do whatever else was necessary to carry out the sale, couldn't he? A. Those were regular pigs. Q. The regular pigs at $4; he could do whatever was necessary to carry out the sale at $4? A. Practically, yes." Walters gave no statement as to whether or not they should be warranted. Practically he left it to Bellmore to do. what was necessary to make the sale. If Bellmore believed the pigs were well, he would not have faithfully represented his master, when asked about hog cholera, if he had refused to speak. Such ill-conduct would probably have cost him his job. There was some evidence that warranties were required in the neighborhood on such sales. We must give the defendant credit for acting in good faith, and when it directed its foreman to sell the pigs at four dollars, it must have believed the pigs were free from disease and it must have expected that its foreman would so state if question was raised.

Under the circumstances, the agent is presumed to have authority to do whatever is necessary to sell the pigs, so far as to state their condition at the time as he and his employer understood it. (*Tice* v. *Gallup,* 2 Hun, 446; *Nelson* v. *Cowing,* 6 Hill, 336; *Bennett* v. *Judson,* 21 N. Y. 238; *Ahern* v. *Goodspeed,* 72 id. 108, 114; *Mayer* v. *Dean,* 115 id. 556, 560; *Craig* v. *Ward,* 3 Keyes, 387; *Washburn* v. *Rainier Co.,* 130 App. Div. 42.)

In *Washburn* v. *Rainier Co.* (*supra*) the defendant's agent represented that the automobile was in perfect condition and would run as good as a new car. The verdict was in favor of the plaintiff and the presiding justice set it aside, directing a

new trial. The Appellate Division reversed the order and reinstated the verdict. Mr. Justice McLAUGHLIN, for a unanimous court, writes: " The claim that the agent had no authority to guarantee the condition of the car cannot be sustained. He had authority to sell the car, and the defendant, having accepted the benefits of the sale, must be held responsible for the statements made by him which were the inducing cause of the sale." (And see *Garner* v. *Mangam*, 93 N. Y. 643.)

In *Mayer* v. *Dean* (*supra*) the court says at page 560: " There is no doubt of the general rule that to a certain extent a principal is bound by the representations of his agent made in effecting a sale of property. Such an agent must be presumed to possess authority to make such representations in regard to its quality and condition as usually accompany such transactions, and his principal cannot receive the fruits of a bargain without adopting the instrumentalities employed by his agent in bringing it to a consummation."

In *Nelson* v. *Cowing* (*supra*) the pump was warranted to be good but turned out to be worthless. The court said: " But a warranty — and so of a representation — is one of the usual means for effecting the sale of a chattel; and when the owner sells by an agent, it may be presumed, in the absence of all proof to the contrary, that the agent has been clothed with all the usual powers for accomplishing the proposed end. So long as the agent is acting within the general scope of his authority, persons dealing with him are considered as dealing with the principal."

In *Tice* v. *Gallup* (*supra*) the defendant's offer to prove whether he instructed the agent to make a warranty as to the age of the horse was excluded, and the court sustained the ruling upon the ground that the agent had the authority unless forbidden.

In *Ahern* v. *Goodspeed* (*supra*) it was held that the delivery of a note to a broker for sale gave him authority to warrant it to be business paper.

The age, breed, soundness, habits and health of an animal exposed for sale are usually known to the seller and unknown to the purchaser. The latter must rely upon the seller's representations on those subjects. They are present and are necessarily incident to the sale of an animal.

In *First National Bank* v. *Farson* (226 N. Y. 218) the alleged guaranty was that the principal and interest of the bonds would be paid by the obligor. That of course was an unusual guaranty, not attending an ordinary sale of bonds. Here, in order to make the sale, it was necessary to answer the question whether the pigs had hog cholera. It is immaterial, on the question of the agent's authority, to consider whether the answer was true or false. If he had a right to make a true answer, that establishes his authority, and the answer became that of the principal. We need not consider whether or not the manner in which the pigs were delivered by the defendant throws some doubt on the good faith of the sale. The agreement contemplated that the plaintiff's agent was to be present the next morning before they were loaded, but before the time for his arrival they were loaded by the defendant and on their way for delivery, so that there could be no inspection until delivery. The delivery was the act of defendant. That question, however, is not very material. The question is not whether the agent had the right to make a misrepresentation, for if he had the right to speak as to the condition of the pigs, the speech was that of the principal. Under the circumstances of this case it must be presumed that Bellmore had authority to make the representations or warranty. I favor an affirmance.

Judgment and order unanimously affirmed, with costs.