WILLIAM B. MAY, JR., Appellant, *v.* ALICE HOYT HAIGHT and Another, Respondents.

Second Department, October 29, 1926.

Brokers — real estate brokers — action by assignee to recover commissions for renting property — counterclaim by defendants that original assignor agreed to supervise alterations in building and to rent building when altered — counterclaim alleges that original assignor failed to perform obligations of contract — agent is liable for negligence in performance of duties — counterclaim arose out of contract sued on and is pleadable under Civil Practice Act, § 266 — original assignee of brokers assumed all liabilities of assignor — plaintiff, second assignee, stands in position of its immediate assignor — counterclaim properly pleaded as offset.

In an action by the assignee of real estate brokers to recover commissions alleged to have been earned by procuring a tenant for defendant's property, the defendants interposed a counterclaim to the effect that the original brokers agreed to supervise alterations in the building and to rent the same, and that said brokers gave improper advice to the defendants as to the competency of the persons engaged as architect and as contractor, and that the brokers failed to supervise the alterations in the building and failed to require a bond by the contractor for the faithful performance of his obligations, and did not exercise due care and skill required by them, which they represented themselves to have, in the performance of the contract. The counterclaim was not based on the alleged bad advice of the brokers, but was based on a breach of the contract in that the brokers failed to supervise the work as agreed with due care, skill and diligence. Therefore, the counterclaim states a cause of action, since the agent was bound to act in good faith and to exercise reasonable diligence and use such care and skill as are ordinarily possessed by those engaged in the same business.

The counterclaim set forth is properly pleadable under section 266 of the Civil Practice Act, since it is based upon and arises out of the contract entered into between the brokers and the defendants in relation to the alteration of the premises and the renting thereof.

The first assignee of the brokers took over all the assets and assumed all the liabilities of the brokers, and, therefore, plaintiff's immediate assignor, the first assignee, was liable to the defendants for any failure on the part of the brokers to perform their contract, and the present plaintiff, who is the second assignee, stands in the same position as his immediate assignor, and, therefore, defendant's claim for damages may be properly offset against the claim for commissions.

APPEAL by the plaintiff, William B. May, Jr., from an order of the Supreme Court, made at the Westchester Special Term and entered in the office of the clerk of the county of Westchester on the 6th day of July, 1926, denying his motion to strike out the counterclaim contained in the answer upon the grounds that it is not one which may be properly interposed in the action, and that it does not state facts sufficient to constitute a cause of action, and for judgment on the pleadings.

*Samuel L. Wallerstein,* for the appellant.

*Donald Havens,* for the respondents.

KELLY, P. J.   The complaint pleads a cause of action to recover $4,550, real estate broker's commissions, for procuring a tenant for defendants' premises, 22 East Sixty-ninth street, Manhattan. Plaintiff sues as the assignee of " Wm. B. May Company Real Estate, Inc.," alleging that " prior to the 19th day of February, 1926," the defendants employed said corporation, which was a duly licensed real estate broker, to procure a tenant for their premises for a long term; that thereafter the broker procured the Lazwal Realty Corporation as such tenant, and that a lease for twenty-one years, with two renewals, was executed; that the services were worth $4,550; that payment was demanded and refused, and that before the commencement of the action the corporation duly assigned the claim to plaintiff.

The answer contains no denial of the allegations contained in the complaint but pleads a counterclaim.   The appeal, as stated in the caption, is from an order denying plaintiff's motion to strike out this counterclaim, and for judgment in favor of plaintiff.

The plaintiff, appellant, contends:

1. That the counterclaim fails to state facts sufficient to constitute a cause of action.

2. That to hold that May & Company (the plaintiff's assignor) were liable to defendants, and that they can offset this liability against plaintiff, is to contend that May & Company were insurers, which is not the law.

3. That the alleged wrong advice given by May & Company to the defendants was not the proximate cause of defendants' alleged damage.

4. That the counterclaim is not authorized by Civil Practice Act, section 266.

Let us look at the counterclaim.

Defendants allege that they are the owners of the premises in question since prior to the year 1904, and that from 1904 to June 1, 1923, they occupied the premises as a private dwelling.

That in 1922 and 1923 William B. May and Charles F. Burrill under the firm name of William B. May & Company, engaged in the business of negotiating contracts for buying, renting and leasing dwelling houses and other real property, managing apartment houses and business property, and otherwise carrying on a general real estate agency business; that in connection with their business they recommended and employed, on behalf of owners of property, architects and contractors to construct, remodel

Second Department, October, 1926.            [Vol. 218

and repair dwelling houses, apartment houses and other buildings, and that they advised the owners in the selection of architects and contractors, acting in an advisory capacity in connection with such construction, remodeling and repairing, " and held themselves out to the defendants as thoroughly experienced and highly skilled in so employing and advising."

The defendants alleged that in the latter part of 1922 they decided to vacate their premises, and consulted May & Company as to the best disposition to be made of the property; that May & Company advised them not to sell, but to have the premises remodeled into stores and apartments and to rent the same; that the defendant Charles S. Haight stated to them that he was too busy to attend to the many details involved in such an undertaking, and that he intended to go to Europe in June, 1923, with Mrs. Haight, to be absent during the summer, and that after the remodeling was completed he would be unable to attend to the details of managing the building.

That May & Company, by Mr. May, assured the defendants that they, May & Company, would act for the defendants, would see the architect and check up his plans to insure the best arrangement for rental purposes; that they would submit the specifications to various building contractors whom they knew, and that they would exercise a general oversight over the whole operation and relieve the defendants of all details in connection therewith, and that after the remodeling was completed they would manage the building, attend to the rental of the stores and apartments, payment of bills, collection of rents, and otherwise act as general agents for the building.

That the defendants, " relying upon the said assurance and upon the said advice," accepted the proposition of May & Company and intrusted the oversight of the remodeling operation and the management of the premises to May & Company, who undertook such oversight and management.

Here we have the alleged contract between May & Company and the defendants, and it is the alleged breach of the obligations of May & Company under this contract which is the basis of the counterclaim contained in the answer.

The defendants alleged that they suggested to May & Company the name of one Atterbury for employment as architect for the remodeling operation, but that May & Company advised against the employment of Atterbury, and advised the employment of an architect named Casale, stating that they knew Casale well, and that he was not only a competent architect, but was specially qualified for the remodeling operation and that he would be more

satisfactory than Atterbury. Defendants allege that, relying on the advice of May & Company, they accepted it and that May & Company, acting for defendants, employed Casale as the architect, and that he drew plans and specifications and acted as architect in connection with the work. The defendants allege that Casale was incompetent and " not equipped to handle a remodeling job of this size, which fact May & Company knew or should have known," and that he performed his work as architect in an incompetent, improper and negligent manner, to defendants' damage. Defendants allege that Casale has not paid them any of the damages resulting from his incompetent and negligent work, and that there are several unsatisfied judgments on record in New York county against him since 1923. Defendants allege that May & Company were grossly negligent in advising the employment of Casale as architect and in recommending him as competent and qualified and equipped to act as architect, and they say that because of this they committed a breach of their undertaking to oversee the remodeling operation. They go on to allege that May & Company solicited bids for doing the work from a list of contractors selected by them, and advised defendants to accept the bid of Hughes & Hughes, which was not the lowest bid, and that May & Company recommended Hughes & Hughes as " competent, reliable and responsible contractors," stating that they (May & Company) had personal experience with Hughes & Hughes in connection with other work and had found them in every way satisfactory. The defendants allege that they relied upon the advice so given to them and authorized May & Company to award the contract for remodeling to Hughes & Hughes.

Defendants say that Hughes & Hughes proceeded with the work from June to October, 1923, when they abandoned it, removed their tools and equipment from the premises and refused to proceed further; that they were incompetent, unreliable and irresponsible and performed their work in an improper and negligent manner and violated their contract, all to defendants' damage.

Defendants charge that May & Company were grossly negligent in advising the employment of Hughes & Hughes, and in their representations that Hughes & Hughes were competent, reliable and responsible; that the contract between the defendants and Hughes & Hughes provided that defendants might require a bond by Hughes & Hughes with sureties for the performance of their contract, and that May & Company negligently omitted to require such a bond; that Hughes & Hughes consisted solely of a man named Peyton Hughes, who has failed to pay the damages sustained by reason of his default in performance of the contract, and

that he is insolvent, with unsatisfied and uncollectible judgments on record against him.

The defendants allege: " That by reason of the said failure of said May and Company to fulfill their undertaking to properly oversee said remodeling operation through their negligence and want of proper care and skill, as hereinbefore alleged, the defendants have been damaged in the sum of Eighty thousand Dollars ($80,000)."

The defendants allege that on January 1, 1924, William B. May & Company assigned all of its assets and liabilities to " William B. May Company Real Estate, Inc.," plaintiff's assignor, which accepted all of the said assets and assumed all of the said liabilities.

The defendants implead William B. May and Charles F. Burrill (the original agents) as defendants, pursuant to section 271 of the Civil Practice Act. " Wherefore, the defendants, Alice Hoyt Haight and Charles S. Haight demand judgment against the plaintiff, dismissing the complaint with costs, and against the defendants William B. May and Charles F. Burrill, impleaded herein, in the sum of Seventy-five thousand two hundred Dollars ($75,200), with interest and the costs of this action."

The first contention of plaintiff, appellant, is that defendants predicate the liability of May & Company upon " alleged erroneous advice and recommendations." He says that defendants seek to hold May & Company liable, and through them to offset their damages against the plaintiff, " who had no connection with said May and Company, solely because the *advice and recommendations* of May and Company, that defendants employ the said Casale and Hughes & Hughes, proved unsatisfactory." Appellant argues that this theory is untenable for the reason that such advice or recommendation was in fact a matter of opinion, and they say the law is well settled that a person cannot be held liable for the expression of an opinion which is subsequently proven to be unsound. (Citing *Renard* v. *Grenthal,* 81 Misc. 135; *Hatton* v. *Cook,* 166 App. Div. 257; *Funk & Wagnalls Co.* v. *Roemer,* 137 N. Y. Supp. 863.)

But, it seems to me, the appellant does not correctly state the facts on which the counterclaim is based. It may be that May & Company would not be liable in damages simply because they gave advice and recommendations which proved unsound or erroneous. The claim is that they did not exercise the care and skill required of them, and that they were negligent in the performance of their obligations to the defendants. The defendants assert that May & Company held themselves out to be skilled and expert in the matter of supervising and managing the alteration and repair of the defendants' building, that they solicited such

care and management and that defendants, relying on their representations, confided in them and placed the enterprise in their care. Whereas, defendants charge that May & Company selected an incompetent architect and a building contractor who was incompetent and insolvent; that they knew, or should have known, that the architect selected by them was incompetent, and that in the case of the building contractor also selected by them, although he was not the lowest bidder, May & Company failed to supervise his work which was performed in an improper and negligent manner, and that they omitted to require a bond from the contractor for the faithful performance of the contract as was therein provided. So the defendants say that May & Company were responsible for the damage which they allege they sustained by reason of the incompetency and negligence of the architect. Not because May & Company simply gave advice or recommendations, but because they undertook the management of the transaction. It is alleged that as part of the agreement entered into by May & Company with defendants they undertook to manage the alleged building for defendants and to attend to renting the property, and this action is brought by plaintiff as the assignee of May & Company to recover commissions alleged to be due under this identical contract.

"The responsibility of an agent or attorney under such circumstances is beyond dispute, and the rule is well settled that the agent is not only bound to act in good faith, but to exercise reasonable diligence and such care and skill as is ordinarily possessed by persons of common capacity engaged in the same business." (*Whitney* v. *Martine*, 88 N. Y. 535, 538, citing Story on Agency, § 183; *Heinemann* v. *Heard*, 50 N. Y. 35; Story's Eq. Juris. § 310.) The theory of the counterclaim is negligence, the cause of action alleged is May & Company's lack of due care, skill and diligence in the matters intrusted to their charge. (*Flynn* v. *Judge*, 149 App. Div. 278.) In my opinion there is no force in appellant's claim that "the alleged wrong advice" of May & Company was not the proximate cause of the damage sustained by the defendants. As already suggested, the counterclaim is not based on wrong advice, but on the breach of a duty owed by May & Company to defendants. The appellant says that the negligence of the architect and building contractor was the immediate cause of the damage and was an intervening and independent act for which May & Company cannot be held liable. I do not agree with the learned counsel for appellant. The allegation is that May & Company were employed by defendants for the very purpose of supervising the operation and to avoid loss or damage to defendants, and that through their breach of duty and negligence the damage has been

sustained. The defendants' theory is that May & Company were directly responsible for the alleged wrongdoing of the architect and the contractor. In *Lowery* v. *Western Union Telegraph Co.* (60 N. Y. 198), cited by appellant, the Court of Appeals held that the loss sustained by plaintiff was due to his reliance upon the honesty of his own agent, and not by failure of the defendant to properly transmit the telegram. In the case at bar the defendants alleged that they advised May & Company that defendants could not attend to the details of managing the operation, and that their reliance was upon the promise of May & Company to manage and supervise the transaction.

The plaintiff, appellant, contends that the counterclaim is not available to defendants in this action under the Civil Practice Act, section 266, which provides: " A counterclaim * * * must tend to diminish or defeat the plaintiff's recovery, and must be one of the following causes of action against the plaintiff * * *: 1. A cause of action arising out of the contract or transaction set forth in the complaint as the foundation of the plaintiff's claim or connected with the subject of the action; 2. In an action on contract, any other cause of action on contract existing at the commencement of the action." In my opinion the counterclaim is based on a contract existing at the commencement of the action, and that it is based upon the identical contract of employment which is the foundation of plaintiff's cause of action. Because under the allegations of the counterclaim the employment of plaintiff's assignor as the renting agent of the premises, which is not denied in the answer, was part of the original agreement of the parties. To be sure, the defendants charge May & Company with negligence, but the negligence charged was a breach of the contract of employment.

The plaintiff is suing as the assignee of William B. May Company Real Estate, Inc., which in turn was the assignee of the assets and business of May & Company against whom defendants' claim originally existed. It is alleged in the counterclaim that May & Company assigned their assets to William B. May Company Real Estate, Inc., which accepted all of said assets and assumed all of the liabilities of the original concern including the liability to defendants, if such liability existed. It would seem that under *Lawrence* v. *Fox* (20 N. Y. 268) plaintiff's immediate assignor was liable to defendants for any dereliction of May & Company, that the plaintiff stands in the same position as his assignor and that the defendants' claim for damages may be properly offset against the claim for commissions alleged in the complaint.

The order denying plaintiff's motion to strike out the counter-

claim and for judgment should be affirmed, with ten dollars costs and disbursements.

JAYCOX, MANNING, YOUNG and LAZANSKY, JJ., concur.

Order denying plaintiff's motion to strike out counterclaim and for judgment affirmed, with ten dollars costs and disbursements.